## McMILLAN et al. v. WHITLEY.

No. 2123.  Decided January 23, 1911 (113 Pac. 1026).

1. LIMITATION OF ACTIONS—ACTIONS FOUNDED ON "WRITTEN INSTRU-
   MENTS." The obligation of one of several persons uniting in
   the purchase of corporate stock under a contract stipulating
   that each of them shall be interested in the proportion that
   the number of shares subscribed for by him bears to the total
   number, and that each shall share in the profits and losses in
   the same proportion, is contractual, and where the stock is
   purchased in accordance with the contract and within the time
   specified, his obligation to pay his proportionate share is found-
   ed on a written instrument, within Comp. Laws 1907, section
   2875, subd. 2, limiting actions founded on written instruments.
   (Page 456.)

2. JOINT ADVENTURES—CONSTRUCTION OF CONTRACT—RIGHTS OF PAR-
   TIES. A contract whereby several persons unite in the purchase
   and sale of corporate stock, for a period of three months, whereby
   each shall be interested in the proportion that the number of
   shares subscribed for by him bears to the total number of shares,
   and whereby each shall share in the profits and losses in the
   same proportion, and whereby the managers may sell the shares
   for default of payment of the proportionate share, authorizes
   the managers to sell the interest of a defaulting person, and
   thus cut him off from further participation in the profits, but
   the right to sell is for the benefit of the managers who may
   carry the account of any defaulting person and thereby permit
   him to continue his interest, and where this is done he must
   pay for his proportionate share of the stock purchased, not
   exceeding the amount subscribed by him.    (Page 458.)

3. JOINT ADVENTURES—CONSTRUCTION OF CONTRACT—RIGHTS OF PAR-
   TIES. The managers purchased stock during fifteen days after
   the date of the agreement, and within the three months they
   sold a part of the shares.  The stock declined but it could not
   be foreseen that the decline would continue.  Before the ex-
   piration of the three months, the managers gave the members
   a statement of the condition of the business, and the amount
   due for stock previously purchased.  Held, that the relation
   between the managers and the members was that of stock-
   brokers purchasing stock on the order of the members on a
   broker's margin, and the members were liable for their pro-
   portionate share of stock purchased and not paid for.  (Page
   460.)

APPEAL from District Court, Third District; *Hon. C. W Morse,* Judge.

Action by H. G. McMillan and another against Charles W. Whitley.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Richards, Richards & Ferry* for appellant.

*Dey & Hoppaugh* for respondents.

FRICK, C. J.

On the 15th day of March, 1903, the appellant, respondents, and three others, entered into an agreement in writing whereby they mutually agreed "to unite in the purchase and sale, from time to time, of the stock of 'the Daly West Mining Company' and for this purpose to form a pool of at least ———— shares of said stock under the management of H. G. McMillan and F. J. Hagenbarth," respondents. In said agreement respondents were designated "parties of the first part" and appellants and Simon Lamberger, W. H. Dickson, and J. Barnett, the three others above referred to, were styled "parties of the second part." The material provisions of said contract are substantially as follows: That "each of the parties of the second part shall be interested in said pool, in the proportion that the number of shares subscribed for by him or them bears to the total number of shares" which were placed in said pool, and each one of the interested parties "shall share in the profits and losses of the pool in the same proportion except as is otherwise provided in article third thereof;" that each one of the parties of the second part "may, and at the request of the parties of the first part shall, at any time or from time to time, take up and pay for his or their said proportion of the said shares that the pool may then own;" that "if any of the

parties of the second part shall arrange to have his or their proportion of the pool's stock carried by parties of the first part, then he or they severally agree, from time to time and at any time, to deposit with the parties of the first part such margin in cash as the parties of the first part may require."

Article third of the agreement reads as follows: "In case any of the parties of the second part shall fail to take up and pay for his or their said proportion of the pool's stock, after request of the parties of the first part, as above provided, or shall fail to deposit with the parties of the first part satisfactory margin, as above provided, the parties of the first part, as managers of the pool, shall have the right to sell the shares then held for his or their account, without any further demand on, or consent of such party of the second part, at any broker's board or at public or private sale, and shall not be accountable to such party of the second part for any loss resulting from such sale, and at any such public sale they are authorized to become the purchasers of such shares, or any thereof. Any loss reulting from such sale of the shares held for account of any such party of the second party in default, as above mentioned, shall be borne not by the pool, but by such party in default exclusively. Upon any such default as aforesaid, the parties of the first part shall have the right to exclude the party so in default from all further interest and participation in the said pool, and in such event the proportionate interests and shares of the remaining parties of the second part in the pool's stock shall be correspondingly modified."

That "the parties of the first part shall be managers of the said pool and may be interested as parties of the second part to this agreement;" that the purchase and sale of shares of stock is to be in the hands of said managers and "all stock purchased or sold for account of the pool may be at any time or times repurchased or resold, provided that the total limit of the pool be not thereby exceeded;" that the "pool shall continue in force for three months from the date thereof, unless previously dissolved by notice in writing from a majority in interest."

The total number of shares that were authorized to be purchased for said pool, and the number each one of the individuals, to said agreement might become liable for under said agreement, is as follows: Simon Bamberger, twelve hundred and fifty shares; F. J. Hagenbarth (respondent), one thousand shares; H. G. McMillan (respondent), J. Barnett, W. H. Dickson, and C. W. Whitley (appellant) two hundred and fifty shares each, making a total that could be purchased for the pool of three thousand, two hundred and fifty shares.

The respondents, as managers of said pool, proceeded to act under the terms of said agreement, and between the 15th and 30th days of March, 1903, purchased, two thousand, one hundred and eighty-five shares of stock all told; and between April 16th and 30th they sold a total of two hundred shares for account of said pool. This left a large amount of stock in the pool, when, under the terms of the agreement, it was closed, of which the appellant's proportion was one hundred and fifty-three shares. The fact is undisputed that one of the managers of the pool, some time after the 30th day of March and before the 15th day of June, 1903, gave appellant personally a statement showing the condition of the pool and the amount owing by appellant to it for stock theretofore purchased. No further notice seems to have been served on appellant until April, 1904, when he was again informed of the state of the pool, the number of shares therein, and the amount of his indebtedness thereto. Again, before this action was commenced, a statement showing the disbursements and earnings of the pool was given him and the amount claimed to be due from him to the pool was demanded from him by respondents as managers of said pool.

The action is based on substantially the foregoing agreement and transactions had pursuant thereto, all of which, in effect, is made to appear from the complaint. The case was tried to the court without a jury, which resulted in findings and judgment in favor of respondents for the amount found due from appellant to them for the one hundred and

fifty-three shares which were left in the pool by appellant. While the specific assignments of error are quite numerous and are discussed at length in appellant's brief, yet in view of appellant's theory, we think two, and only two, questions arise in the case: (1) Was the cause of action sued on barred by virtue of our statute when this action was commenced? and, (2) if not, is the appellant liable under the terms of the written agreement which we have set forth for the cost price of the one hundred and fifty-three shares of stock which were purchased for account of the pool as his proportion of the shares and which appellant neither received nor paid for?

No claim is made that the so-called pool is illegal, and we shall therefore treat it as legal and enforceable. Subdivision 2 of section 2875, Comp. Laws 1907, provides that "an action upon any contract, obligation, or liability founded upon an instrument of writing" must be commenced within six years from the time the cause of action accrued. Appellant contends that the foregoing statute does not apply to the cause of action in question because the liability, if any, is not founded on a writing. A mere cursory reference to the writing, the material parts of which we have set forth, in our judgment, discloses that each of the parties thereto assumed certain obligations and agreed to do certain things, one of which was, that each would pay, or cause to be paid, to the pool managers the purchase price of certain shares of stock, not exceeding a stipulated number, if purchased for the purpose and within the time specified in the writing. The undisputed evidence is to the effect that the shares of stock mentioned in the agreement were purchased, that this was done in accordance with its stipulations and for the purpose contemplated, and within the time specified. Under the terms of the agreement purchases of stock could have been made at any time up to the 15th day of June, 1903. The last purchase, however, was in fact made on the 30th day of March, 1903. From the evidence it is manifest that the transactions under the agreement were conducted by respondents with reasonable diligence and pru-

dence. If, therefore, we should assume appellant's theory to be the correct one, namely, that the cause of action sued on accrued on the date when the last purchase of stock was made under the agreement, yet if the cause of action is one which is founded upon a writing, then the cause of action would not have been barred when this action was commenced. We think it must be conceded that this action is founded upon a writing. That it was commenced on the 15th day of May, 1908, is beyond dispute. That the last purchase of stock under the agreement, as we have seen, was made March 15, 1903; that the period of time within which an action may be commenced is fixed in the foregoing statute, when founded upon obligations in writing, is six years, hence the conclusions is unavoidable that the action sued on was not barred when this action was commenced.

This brings us to the second proposition, namely: In view of the facts and circumstances, is appellant liable at all to respondents upon the written agreement? A. His counsel, in substance, contend that respondents cannot recover upon the written agreement in question for the reason that they did not, with that degree of promptness and diligence required by law, either dispose of the stock or advise appellant of the state of the account with respect to the purchase and sale of the shares of stock which were the subject-matter of the written agreement, and upon which this action is alleged to be based. It is in effect contended that it was the duty of respondents to forthwith close the pool when the time limit had arrived, to promptly inform each one interested in the pool of the number of shares purchased and the purchase price thereof, and to demand payment for any amount due by any one of the interested parties, and, if the amount due was not paid, then forthwith to dispose of the interest of the one in default, credit his account with the receipts, and debit it with any balance due. It is asserted that any one of the parties in default would then be liable to the managers of the pool for any balance so due, including the reasonable charges and expenses. From the evidence it is made to appear that if the course of procedure

outlined by counsel had been followed, and the stock had been sold on the 15th day of June, 1903, when the time limit fixed by the written agreement was reached, or if it had been sold within a resonable time thereafter, it could have been sold for sufficient to pay all that was then claimed as owing by appellant to the pool. Counsel therefore contend, that since respondents failed to close the pool, and failed to sell appellant's proportion of stock for his account and to apply the proceeds of such sale upon his indebtedness to the pool, therefore respondents cannot recover the purchase price of the stock from appellant. In this connection it is urged that in view that respondents do not in their complaint set forth that they had complied with the foregoing conditions, therefore the complaint is defective in substance, and, further, that since respondents did not prove by any competent evidence that they had discharged the duty required of them as aforesaid, therefore the conclusions of law and judgment of the court are erroneous. We cannot yield assent to counsel's contention. We can find nothing in the written agreement which made it obligatory upon respondents to so deal with the stock. Under the terms of the written agreement, respondents, no doubt, could have sold the interest of any defaulting member and thus could have cut him off from further participation in the profits of the pool, if any resulted. As we construe the agreement, however, the right to sell the shares of a defaulting member was a matter that was inserted in the agreement for the benefit of respondents as a means for the prompt enforcement of the obligations assumed by the parties to the agreement, and not for the benefit of the defaulting members, except as such sales of stock might incidentally benefit them by discharging their obligations to the managers of the pool to the extent that the proceeds of such a sale would discharge the obligation of the delinquent member to pay for the stock. The respondents, under the agreement, had the right to carry the account of any of the members, however, and to thus permit any of them to continue their interest in the pool, and if this course was pursued

such member or members would, nevertheless be obligated
to pay for his or their proportion of the stock purchased,
not exceeding the amount subscribed for by each, unless such
member or members expressly directed the respondents, as
managers of the pool, to sell his or their interest therein and
to apply the proceeds to the payment of his or their obliga-
tions.    The fact that the market price of the stock which
was purchased under the agreement fell, and continued to
do so, and the venture entered upon and contemplated by
the agreement proved to be anything but profitable—in fact,
resulted in considerable loss to all of the parties—does not
affect their legal status or obligations.    Had the venture
resulted in a profit under precisely the same facts and cir-
cumstances in so far as respondents' and appellant's con-
duct is concerned, he could have successfully claimed his
share of such profits.    This being so, we can see no legal
reason which authorizes us to permit him to escape from
the obligation to pay for his proportion of the stock which
was purchased for account of the pool.    Both the duty, as
well as the rights, of all the interested parties were defined
by the written agreement, and we cannot see wherein the
respondents have failed to comply with the duties imposed
upon them, while, upon the other hand, it seems clear to
us that the appellant has failed to comply with the obliga-
tion assumed by him.    No doubt, in view that the price of
the stock declined, and continued to do so, respondents might
easily have averted the loss to appellant had they promptly
sold his portion of the stock at the time the pool was to
be closed, but perhaps no one could have foreseen that the
stock in question would decline in price to the extent that it
did, and that such decline would continue as it did.    But
be that as it may, since the respondents have fulfilled their
part of the agreement and appellant has not, there is but
one result permissible in a court of justice, and that is to
require him also to discharge the obligations he has assumed.
If the respondents were to be treated as mere stockbrokers
who had purchased the stock in question upon the order of
appellant and upon a broker's margin, we think that under

the facts and circumstances disclosed by the evidence in the case it could not be held that under the general rules of law applicable respondents' conduct had relieved appellant from paying for his proportion of the stock purchased for account of the pool under the agreement. The reciprocal rights and duties of a principal and his stockbroker are clearly stated by the author of Mechem on Agency in section 936, and again referred to in section 955. The relations existing between respondents and appellant under the agreement in question, in essence and effect, were the same as those outlined by Mr. Mechem in the sections referred to. Under the law as there stated we think appellant would be clearly liable for the amount sued for in this action, and hence he must be held so under the agreement in question.

From what we have said it follows that the contentions of appellant's counsel cannot be sustained. It further follows that for the reasons hereinbefore stated, counsel's objections to the complaint, and to the findings of the court, are immaterial, and, in view that counsel's theory of the case cannot prevail, the findings of the court are sufficient to sustain the judgment. Nor, in view of the conclusions we have reached, is it necessary to further discuss any of the other assignments of error.

The judgment, therefore, should be, and it accordingly is, affirmed, with costs to respondents.

McCARTY and STRAUP, JJ., concur.